# IN THE COURT OF APPEALS OF IOWA

No. 21-0242
Filed October 6, 2021

IN THE INTEREST OF M.O. and Z.O.,
Minor Children,

E.I., Mother,
        Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, District Associate Judge.

A mother appeals adjudicatory and dispositional orders filed in a child-in-need-of-assistance proceeding. **AFFIRMED IN PART AND REVERSED IN PART.**

Katie Eastvold, North Liberty, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Julie Trachta, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

A mother appeals adjudicatory and dispositional orders filed in a child-in-need-of-assistance proceeding. She contends (1) the State failed to prove the grounds for adjudication cited by the district court; (2) the State failed to make reasonable reunification efforts; and (3) the district court should not have placed the children with their father.

## I.    *Grounds for Adjudication*

This appeal involves two of the mother's children, born in 2007 and 2013. The children were removed from the mother's custody following her altercation with their father and an adult child. The children were placed with their father.

The district court adjudicated the children in need of assistance (CINA) under three statutory grounds: Iowa Code sections 232.2(6)(b), (c)(2), and (n) (2020). Because those grounds may affect subsequent proceedings, we address each of them. *See In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014) (stating "[t]he grounds for a CINA adjudication do matter" because the grounds "have important legal implications beyond the adjudication" (citation omitted)).

Section 232.2(6)(b) defines a "[c]hild in need of assistance" as "an unmarried child . . . [w]hose parent . . . has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." "'[P]hysical abuse or neglect' and 'abuse or neglect' mean 'any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent . . . .'" *J.S.*, 846 N.W.2d at 41 (citing Iowa Code § 232.2(42)).

The State does not point to a nonaccidental physical injury suffered by either child involved in this proceeding. Instead, the State relies on a "physical

altercation" with the mother's adult child and a "serious assault" on the child's father. Neither qualifies as physical abuse or neglect under section 232.2(6)(b). *See* Iowa Code § 232.2(5) (defining "[c]hild" as "a person under eighteen years of age"), (42) (referring to injuries "suffered by a child").

The question, then, is whether the mother was "imminently likely to abuse or neglect" the children. *Id.* § 232.2(6)(b). "[W]e do not require neglect or physical or sexual abuse to be on the verge of happening before adjudicating a child as one in need of assistance." *J.S.*, 846 N.W.2d at 43. We do require "specific prior incidents of abuse or neglect." *Id.* As in *J.S.*, "the State failed to prove any specific prior incidents of abuse or neglect" with respect to these children. *Id.* As noted, its case for adjudication under section 232.2(6)(b) was based on the mother's physical abuse of adults. While a department of human services social worker mentioned the older child's report of "physical violence by her mom, scratches, being hit, things of that nature in the past," she admitted that the department did not perform an assessment of the allegation "because there was no proof of any injuries at this time."

The State also cites the "mother's issues with her mental health and explosive anger," the children's lack of "adequate care as evidenced by their ongoing exposure to violence and emotional abuse," and one of the children's "ingestion of methamphetamine." These circumstances do not qualify as "specific prior incidents" of abuse or neglect. *See id.* at 42–44 (citing opinions involving prior acts of physical or sexual abuse and stating "we do not believe general statements about methamphetamine addiction are enough by themselves to prove that a child is imminently likely to suffer physical harm under section 232.2(6)(b)").

We conclude the State failed to prove the elements of section 232.2(6)(2)(b). We reverse the adjudication under that provision.

We turn to section 232.2(6)(n), which defines a child in need of assistance as a child "[w]hose parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care." The State relies on the mother's mental capacity and drug abuse to support this ground for adjudication. The State failed to prove either circumstance by clear and convincing evidence.

With respect to mental health, the department social worker testified the mother "seems to have some very significant mental health issues," but she provided no professional documentation of those issues. The social worker had yet to obtain an order requiring a psychological evaluation of the mother and she stated she did not know the mother's mental health diagnoses, whether the mother took any medication to address any mental health diagnoses, and whether she attended therapy. The record lacks clear and convincing evidence to support a determination that the mother's mental capacity resulted in the children's receipt of inadequate care. *See In re S.S.*, No. 21-0121, 2021 WL 1400774, at *3 (Iowa Ct. App. Apr. 14, 2021) ("The State failed to establish any nexus between the father's mental health and the father's assault of the mother or, in turn, the children receiving inadequate care as a result thereof."); *In re I.N.*, No. 20-0793, 2020 WL 5651595, at *6 (Iowa Ct. App. Sept. 23, 2020) (finding "insufficient reason to believe the mother's mental condition would result in the children not receiving adequate care in her custody"); *In re M.B.*, No. 20-0404, 2020 WL 2065965, at *2 (Iowa Ct. App. Apr. 29, 2020) (concluding "the State failed to prove the mother's

'mental capacity or condition' resulted in deprivation of care" where the child protective worker acknowledged the mother had not undergone a mental-health evaluation and she declined to characterize the abuse as a mental-health diagnosis).

As for drug use, the social worker expressed "concerns about meth[amphetamine] use" based on a hair test of the younger child that was positive for the drug. Although the positive test result led to a founded child abuse report for "presence of illegal drugs," the perpetrator was listed as "[u]nknown" and the department reported "[t]here was no information to support that either parent is abusing substances." The social worker acknowledged the department had yet to obtain a court order requiring the mother to undergo drug testing and she could only speculate on the source of the methamphetamine. While the district court made an adverse credibility finding with respect to the mother's explanation for the child's positive drug test and we give weight to that finding, we are not persuaded the positive drug test alone sufficed to support a determination that the mother's substance abuse resulted in her failure to provide adequate care. *See In re M.S.*, 889 N.W.2d 675, 682 (Iowa Ct. App. 2016) ("[T]he mere fact of use does not establish adjudicatory harm."); *In re A.W.*, 2021 WL 2021646, at *1 (Iowa 2021) (agreeing with the court of appeals that "the State failed to provide clear and convincing evidence that Mom had a substance abuse problem resulting in A.W. not receiving adequate care"); *In re E.M.*, No. 20-1722, 2021 WL 811135, at *1–2 (Iowa Ct. App. Mar. 3, 2021) (declining to affirm adjudication under section 232.2(6)(n) notwithstanding founded child abuse assessment for dangerous substances); *In re A.W.*, No. 20-1406, 2021 WL 377448, at *4 (Iowa Ct. App. Feb.

3, 2021) (overruled on other grounds by *A.W.*, 2021 WL 2021646, at *2) (acknowledging mother's repeated positive drug tests and "history of substance abuse" but concluding "the State has not proven by clear and convincing evidence that the mother's substance abuse resulted in [the child] not receiving adequate care"); *In re L.B.*, No. 20-1164, 2020 WL 6482087, at *2 (Iowa Ct. App. Nov. 4, 2020) (reversing adjudication under section 232.2(6)(n) where State relied on testimony the drug "could impact a user's ability to adequately and safely parent a child"); *In re L.B.*, No. 19-1671, 2019 WL 6358452, at *2 (Iowa Ct. App. Nov. 27, 2019) (concluding State failed to present clear and convincing evidence that a "particular incident was fueled by [the father's] use of drugs or alcohol" and reversing adjudication under section 232.2(6)(n)); *cf. In re A.B.*, 815 N.W.2d 764, 767, 776 (Iowa 2012) (referring to children's adjudication pursuant to Iowa Code sections 232.2(c)(2) and (n) and stating, "[A]n unresolved, severe, and chronic drug addiction can render a parent unfit to raise children"); *In re H.W.*, 961 N.W.2d 138, 144–45 (Iowa Ct. App. 2021) (affirming adjudication under section 232.2(6)(n) where department cited children's exposure to unresolved mental health and substance abuse issues and domestic violence); *In re J.B.*, No. 21-0241, 2021 WL 1662248, at *3 (Iowa Ct. App. Apr. 28, 2021) (concluding a founded abuse report noting father's admission to daily marijuana use and use in the presence of the children supported adjudication under section 232.2(6)(n)). We conclude the State failed to prove by clear and convincing evidence that the children should be adjudicated in need of assistance pursuant to section 232.2(6)(n). We reverse the adjudication under that provision.

We are left with section 232.2(6)(c)(2), which defines a child in need of a assistance as a child "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child." On our de novo review, we agree with the district court that this ground was satisfied.

The mother had an "explosive" temper that she manifested by physically abusing members of her family. *See In re L.H.*, 904 N.W.2d 146, 151 (Iowa 2017) ("Although the State does not present evidence showing that [the father] has ever physically abused L.H., the State does present evidence that [the father] has serious anger issues that have led him to physically abuse other current and previous members of his household."). The department intervened after she had an argument with the children's father that resulted in injury to the father. Both children were in the home at the time of the argument. According to the department social worker, the older child reported that domestic violence between the parents was "an ongoing issue" and the mother was "the aggressor." While the mother denied committing acts of violence against the children's father, she admitted pushing and biting her adult child.

In addition, a department social worker testified the mother's "communication toward her children [was] extremely inappropriate" and included "[a] lot of cursing, calling names[, and] talking poorly about their father on a regular basis." The mother acknowledged she had a propensity to cuss and agreed she cussed at her older child.

At the time of the adjudicatory hearing, the mother was living in a truck. She stated that, if her children were returned, she would stay with her mother until she could get housing. At the same time, she conceded her relationship with her mother was unhealthy.

We conclude the department proved the ground for adjudication set forth in section 232.6(2)(c). We affirm the adjudication under that provision.

## II. Reasonable Efforts

Following a hearing, the district court found the mother was "unsafe" and had "threatened the physical safety of the provider and children." The court suspended visits between the mother and her children and ordered the team working with the mother "to determine if there [was] a safe video visit plan that [could] be implemented" or investigate "visitation in a therapeutic setting." In short order, the team met with the mother, discussed expectations at visits, and agreed to transition back to "in person" supervised visits at the service provider's office. At the dispositional hearing, the State asked the court to afford the department discretion with respect to visits. The district court denied the request, stating "[v]isits right now will remain fully supervised with no discretion as to visitation." The court also imposed a no-contact order between the mother and father.

The mother contends the suspension of visits and the no-contact order contravened the department's obligation to make reasonable efforts toward reunification. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The State responds that we need not address the suspension of visits because they were reinstated. We agree with the State. *See E.M.*, 2021 WL 811135, at *2 (stating

"we cannot go back in time and restore custody based on alleged errors in the initial removal order").

We turn to the court's imposition of a no-contact order. The background is as follows. Following the incident that precipitated the department's involvement, the father obtained a criminal no-contact order against the mother. That order was later "dropped" at the father's request. The father sought another no-contact order that was denied. At that juncture, the department asked the juvenile court to issue its own no-contact order. The court granted the request. The court ordered that "there be no contact between the parents." The court instructed the mother's attorney to advise his client that she was "not allowed to contact the father in person, by phone call, through her daughter, by showing up at the house." The court also instructed the father not to be "contacting" the mother "in any manner."

On appeal, the mother asserts the order "hinder[ed] her ability to reunify with her children." To the contrary, the order permitted her to have supervised contact with the children "in a neutral location."

We conclude the department satisfied its reasonable-efforts mandate.

### III.    *Placement with Father*

The mother contends "the children should not live with their father and should live with her instead." She cites her role as "primary caregiv[er] throughout their lives." Without belaboring the point, continued removal from the mother's home was in the children's best interests. *See In re L.H.*, 904 N.W.2d at 149 ("[O]ur principal concern is the best interests of the child.").

### IV. *Disposition*

We affirm the child-in-need-of-assistance adjudication under Iowa Code section 232.2(6)(c)(2). We reverse the adjudication under Iowa Code sections 232.2(6)(b) and (n).

**AFFIRMED IN PART AND REVERSED IN PART.**